**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

WENDY W. GHANNAM,                    :
                                     :
          **Plaintiff,**             :
     v.                              :      **Civil Action No. 04-0865 (GK)**
                                     :
                                     :
ANDREW S. NATSIOS,                   :
     Administrator,                  :
     U.S. Agency for                 :
     International Development,      :
                                     :
          **Defendant.**             :
_____:


**MEMORANDUM OPINION**

     Plaintiff Wendy W. Ghannam, proceeding pro se, brings suit

against Defendant Andrew S. Natsios, Administrator of the United

States Agency for International Development ("USAID"), under Title

VII of the Civil Rights Act of 1964.[1]  42 U.S.C. §§ 2000e et seq..

Plaintiff alleges discrimination by association due to her marriage

to a "Palestinian Arab/Muslim."  Compl. ¶ 1.  This matter is before

the Court on Defendant's Motion to Dismiss or, in the Alternative,

for Summary Judgment ("Def.'s Mot."), [**#11**].  Upon consideration of

the Motion, Opposition, Reply, and the entire record herein, and

for the reasons stated below, Defendant's Motion is **granted.**

---

     [1]  Plaintiff does not specify in her Complaint the statute
under which she brings her discrimination claim.  Therefore, the
Court will treat the claim as having been brought under Title VII,
since it covers the type of discrimination Plaintiff is alleging.

## I.    BACKGROUND

Plaintiff began working for USAID in 1988.  Def.'s St. of Undisp. Mat. Facts ¶ 1.  She was a GS-7 Employee Development Assistant from September 1993 through November 1995, when she became a GS-3 Information Receptionist, earning the pay of a GS-7. Id. ¶ 2.  In September 1996, Plaintiff was terminated subject to a Reduction in Force ("RIF").  Id. ¶ 6.

In December 1995, Plaintiff filed a complaint with USAID's Office of Equal Opportunity Programs ("EOP") alleging discrimination based on race (Caucasian), sex (female), and disability (carpal tunnel syndrome and tendinitis) ("Case #1"). Id. ¶ 5.  Plaintiff amended her complaint to add several additional discrimination claims in 1996.  Id. ¶ 8.

After various administrative decisions and interim appeals, in November 2000 the Equal Employment Opportunity Commission ("EEOC") held that Plaintiff's race and sex discrimination claims were without merit, but that USAID did fail to accommodate her by not considering the possibility of providing "assistive technology" for her disability.  Id. ¶ 16 and Ex. 2.  Accordingly, the EEOC ordered USAID to reinstate Plaintiff to her GS-7 position and pay her back pay and attorney's fees.  Id.  Plaintiff filed a request for reconsideration, but the EEOC denied it.  Id. ¶ 15 and Ex. 14.

On December 14, 2001, shortly after Defendant had begun the process of reinstating Plaintiff to her former position,

Plaintiff's counsel informed Defendant that Plaintiff's psychiatrist had determined that she was fully incapacitated, and therefore unable to return to work.  Id.  ¶¶ 17-18 and Ex. 17. Plaintiff's counsel also informed Defendant's counsel that the worker's compensation payments Plaintiff was receiving would constitute full satisfaction of Defendant's back pay obligations. Id.  ¶¶ 19-20, 23-25 and Ex. 23.  Thereafter, on April 29, 2002, Defendant submitted a final compliance report to the EEOC, outlining the steps it had taken in response to the November 2000 Order from Case #1, and on May 15, 2002, the EEOC informed Plaintiff that Defendant had complied with the November 2000 Order. Id. ¶¶ 23-25 and Ex. 23.

On March 14, 2002, Plaintiff sent a letter to an EEOC compliance officer requesting action related to the EEOC decision in Case #1.  In her letter, she stated that "[her] marriage to a Palestinian Arab/Muslim was at the forefront of USAID eradicating [her] in 1996 in its RIF."  Id. ¶ 21 and Ex. 21.  Then in June 2002, approximately six years after Plaintiff was terminated subject to the RIF, she sent a letter to Defendant informing him that she was lodging a second complaint ("Case #2"), this time asserting discrimination based on her marriage to a Palestinian Arab/Muslim.  Id. ¶ 26 and Ex. 25.  She alleged that she tried to bring this claim back in 1995, but that the agency refused to allow her to bring it.  She asserted that the discrimination began in

1994 and continued until the present because of USAID's failure to comply with the November 2000 EEOC order issued to resolve her original complaint.  Id.

In September 2002, the Director of EOP issued a Final Agency Decision ("FAD") dismissing Plaintiff's second complaint because it stated the same claim that had been decided in her first complaint. Id. ¶ 29 and Ex. 28.  The Director of EOP found Plaintiff's allegations that her EOP Counselor "rejected" the instant discrimination claim in 1995, at the time of her original complaint, unsubstantiated.  Id.  Finally, the FAD noted that Plaintiff's initial complaint in 1995 "encompassed all the issues that [she] had brought regarding any alleged discrimination related to [her] employment with USAID."  Id.

Plaintiff appealed.  In November 2002, the agency responded, noting that the new discrimination claims were untimely because they should have been brought in 1995 in Plaintiff's original complaint.  Id. ¶ 34 and Ex. 34.  After several decisions regarding enforcement of the order in Plaintiff's 1995 EEOC case, in February 2004, the EEOC denied Plaintiff's appeal pursuant to 29 C.F.R. § 1614.107(a)(1), and determined that the claims were the same as those in her original case.  Id. ¶ 42 and Ex. 44.  In March 2004, the EEOC denied Plaintiff's request for reconsideration.

Plaintiff brought suit in this Court within 90 days of the EEOC's final decision in her second case, as required by 42 U.S.C.

§ 2000e-16(c) and 29 C.F.R. § 1614.408.   Plaintiff's Complaint
alleges that she suffered "overt discrimination . . . when she
worked at USAID," and that beginning in 1994, USAID officials made
various discriminatory statements based on her marriage to a
Palestinian Arab/Muslim.   Compl. at 2; see generally Pl.'s St. of
Facts Outlining Agency's Impropriety ("Pl.'s St.").   Plaintiff also
claims that the EOP Counselor refused to allow her to assert this
claim in her 1995 EEOC complaint.   Compl. at 2.   She requests
remand of this case to the EEOC for further investigation.

## II.   STANDARD OF REVIEW[2]

Summary judgment should be granted if the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with any affidavits or declarations, show that there is no
genuine issue as to any material fact and that the moving party is
entitled to judgment as a matter of law.   See Fed. R. Civ. P. 56.
Material facts are those that "might affect the outcome of the suit
under the governing law."   Anderson v. Liberty Lobby, Inc., 477
U.S. 242, 248 (1986).

The party seeking summary judgment bears the initial burden of
demonstrating the absence of a genuine issue of material fact.
Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).   The nonmoving
party then must "go beyond the pleadings and by [its] own

---

[2]   Because the Court must consider the Administrative Record,
the Court must treat Defendant's Motion as one for summary
judgment.

affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. at 324 (internal quotations omitted).  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (nonmoving party has affirmative duty "to provide evidence that would permit a reasonable jury to find" in its favor); Crenshaw v. Georgetown Univ., 23 F. Supp. 2d 11, 15 (D.D.C. 1998) (noting that "adverse party must do more than simply 'show that there is some metaphysical doubt as to the material facts'" (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

In deciding a motion for summary judgment, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). Ultimately, the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

**III. ANALYSIS**

Plaintiff alleges discrimination based on her marriage to a Palestinian Arab/Muslim. Specifically, she challenges "various statements and threats made to her while employed at USAID by various supervisor/managers, department heads, the agency's

Inspector General, and his security representatives."  See Pl.'s St. ¶ 1.  Plaintiff also alleges that this discrimination occurred "since 1994 and continuing [sic] again in Year 2002, thru [sic] this date."[3]

     Defendant argues that this case must be dismissed in its entirety because the Court lacks jurisdiction over certain of Plaintiff's claims, and that Plaintiff fails to state a valid claim upon which relief can be granted.  Specifically, Defendant alleges that Plaintiff does not establish a prima facie case of Title VII discrimination, fails to state a claim, and did not timely exhaust administrative remedies.  See Def.'s Mot. at 1.  The Court need not address all of these arguments, as it is clear Plaintiff did not timely exhaust her administrative remedies.

     Federal employees must timely file all applicable administrative complaints and appeals to bring a claim in federal court.  Bowden v. U.S., 106 F.3d 433, 437 (D.C. Cir. 1997).  The EEOC regulations provide that a complainant must consult an agency

---

[3] To establish a "continuing violation," a plaintiff must show either (1) a series of related acts, one or more of which falls within the limitations period, or (2) the maintenance of a discriminatory system both before and during the limitations period.  Valentino v. United States Postal Serv., 674 F.2d 56, 65 (D.C. Cir. 1982); Miller v. U.S., 603 F. Supp. 1244, 1247 (D.D.C. 1985); see generally, National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (U.S. 2002).  Plaintiff fails to allege a series of related acts establishing a continuing violation and fails to allege that USAID maintained a discriminatory system both before and during the limitations period.

EEO counselor within 45 days of the alleged discriminatory act.  29 C.F.R. § 1614.105(a)(1).

Although Plaintiff alleges discrimination occurring as far back as 1994, at no time throughout the five-year litigation of Plaintiff's 1995 EEOC complaint did she ever raise the instant claim of discrimination based on her marriage to a Palestinian Arab/Muslim.  Plaintiff's assertion of the claim in her second EEOC complaint in 2002 was too late.  The EOP dismissed that claim as untimely, pursuant to 29 C.F.R. § 1614.105(a)(1) which provides that a complainant must consult an agency EEO counselor within 45 days of the alleged discrimination.  Def.'s St. ¶ 29 and Ex. 28. The EOP decision stated, "[n]either when [Plaintiff] filed [her] original complaint in 1995, nor in any of the numerous amendments to [her] complaint in 1995 and 1996, did [she] reference a basis for alleged discrimination related to [her] affiliation to [her] spouse." Id.

Plaintiff responds that Defendant should be estopped from dismissing her claim as untimely because she was not allowed to bring this claim in her 1995 complaint, and was therefore forced to bring it six years after her termination.[4]  Pl.'s Ans. ¶ 2.

---

  [4]  Although she does not cite the provision, Plaintiff relies on 29 C.F.R. § 1614.107(g), which  states in relevant part that the counselor shall not attempt in any way to restrain the aggrieved person from filing a complaint.

Plaintiff is correct that the requirement of filing a timely administrative complaint is "not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 392 (1982); Bowden, 106 F.3d at 437.  A court's power to exercise equitable tolling, however, "will be exercised only in extraordinary and carefully circumscribed instances."[5] Mondy v. Sec. of the Army, 845 F.2d 1051, 1057 (D.C. Cir. 1988).  A plaintiff will not be afforded extra time to file without exercising due diligence, and the plaintiff's excuse must be more than a "garden variety claim of excusable neglect." Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990).

In cases where there was no due diligence, courts have denied equitable tolling.  Irwin, 498 U.S. at 96 (noting that equitable tolling is extended "sparingly," and denying it when attorney's absence from the country resulted in the late return of a right-to-sue letter); Baldwin Co. Welcome Ctr. v. Brown, 466 U.S. 147, 151-52 (1984)(denying equitable tolling on basis of "absence of prejudice" to the defendant and noting that "[p]rocedural requirements established by Congress . . . are not to be

---

[5]   Smith-Haynie v. District of Columbia, 155 F.3d 575, 579 (D.C. Cir. 1998) ("equitable tolling and estoppel . . . are for the judge to apply, using her discretion, regardless of the presence of a factual dispute").

disregarded by courts out of a vague sympathy for particular litigants"); Smith-Haynie, 155 F.3d at 579-81 (denying equitable tolling even though Plaintiff claimed she was non compos mentis during limitations period and where defendants did nothing to mislead plaintiff as to the applicable time limits); Dougherty v. Barry, 869 F.2d 605, 613 (D.C. Cir. 1989) (rejecting as untimely all Title VII claims where plaintiffs mistakenly believed they could not bring suit because they had a pending claim with the District of Columbia Office of Human Rights).

        Plaintiff claims that her agency EOP Counselor refused to allow the instant claim to be added to her 1995 EEOC complaint.[6] In support of this claim, Plaintiff provides a December 1995 memorandum in which she communicated her disappointment with her EOP counselor for "refus[ing] to add the [instant] ethnicity discrimination charges."  See Pl. Opp'n to Mot. at 4 and Ex. 5. This single effort is not sufficient to meet the high burden a plaintiff seeking equitable tolling must satisfy.  Plaintiff could have amended her complaint at any point during the five year litigation of her original EEOC claim.  See 29 C.F.R § 1614.106(d) (a "complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or

_____

    [6] USAID's Director of EOP previously found this claim to be unsubstantiated.  See Def.'s Mem. at 26-27 and Ex. 12.

related to those raised in the complaint").    Indeed, Plaintiff amended her EEOC complaint several times in 1995 and 1996 and failed to raise this claim at that time.

_____Moreover, Plaintiff had the right to appeal any improper exclusion of this claim of discrimination, or to raise it with the EEOC Administrative Judge within 90 days of receiving a decision, but she failed to do so.   See 29 C.F.R. § 1614.106(e)(1).   When Plaintiff finally did raise this claim in July 2002, six years after she was terminated subject to the RIF action, the time for filing such a claim had long expired.    See 29 C.F.R. § 1614.105(a)(1).

Despite the generous reading afforded Plaintiff's Complaint in light of her pro se status, this is not an extraordinary instance where Plaintiff ought to be given extra time in which to raise a claim of discrimination.    By waiting six years after her termination to bring this claim, Plaintiff plainly did not exercise due diligence.  Accordingly, there is no justification for applying equitable tolling, and Plaintiff's failure to timely exhaust administrative remedies results in a dismissal of the Complaint in its entirety.

**IV.  CONCLUSION**

Accordingly,  Defendant's  Motion  to  Dismiss  or,  in  the Alternative, for Summary Judgment, [**#11**], is **granted**, and this case

is **dismissed** in its entirety.  An Order will issue with this

Memorandum Opinion.


February 6, 2006                    /s/
                                    Gladys Kessler
                                    United States District Judge

**Copies to:**  Attorneys of record via ECF and

Wendy W. Ghannam
9826 Sweet Mint Drive
Vienna, VA 22181